HOFFMAN, J.A.D.
*616 This case arises from the qui tam[1] complaint filed by plaintiff William Brennan on behalf of the State, alleging defendant Steven Lonegan violated the New Jersey False Claims Act (FCA), N.J.S.A. 2A:32C-1 to -18, by submitting a false statement in a request for public campaign *927 funds. Plaintiff appeals from a November 18, 2016 order granting summary judgment in favor of defendant. Defendant cross-appeals from an earlier order denying summary judgment based on standing and jurisdiction grounds. For the reasons that follow, we affirm the dismissal of plaintiff's complaint, but on different grounds than the trial court.[2] Specifically, we affirm the grant of summary judgment because we hold plaintiff lacks standing to bring the FCA complaint.
Defendant was a candidate for governor in the 2009 New Jersey Republican primary election. Defendant applied for public campaign funds pursuant to the New Jersey Campaign Contributions and Expenditures Reporting Act (the Reporting Act), N.J.S.A. 19:44A-1 to -47. As part of that application, defendant filed a certification with the New Jersey Election Law Enforcement Commission (the Commission)[3] verifying that "during the four years prior to the date upon which I became a candidate for nomination for election to the Office of Governor, I have not *617 formed, assisted in the formation of, or am not now involved in any way in the management of an issue advocacy organization ...." The Commission approved defendant for public campaign funds and he began receiving funds in January 2009.
In February 2009, as the result of a newspaper article, the Commission authorized an investigation to determine if defendant "formed, participated in the formation of, or was in any way involved in the management of the Americans for Prosperity, an issue advocacy group." At that time, the Commission also temporarily suspended payment of public campaign funds to defendant. In March 2009, after completing its investigation, the Commission advised defendant that "no further action would be taken on the issue," and resumed defendant's receipt of public campaign funds.
On August 18, 2011, plaintiff filed his qui tam complaint, alleging defendant violated the FCA. On November 3, 2011, the trial court ordered the complaint unsealed after the State declined to intervene.
In July 2012, defendant filed his first motion for summary judgment, asserting both lack of standing and lack of subject matter jurisdiction. The judge assigned to the case heard oral argument; however, she did not decide the motion. Almost three years later, in January 2016, the motion was assigned to a different judge, who heard renewed oral argument. He then entered an order denying summary judgment, rejecting defendant's arguments regarding standing and jurisdiction. The trial judge found plaintiff had standing, reasoning his complaint was not entirely based on newspaper articles and provided more detailed allegations than the articles.
In October 2016, defendant filed a second motion for summary judgment. The trial court granted that motion, reasoning there were no disputed issues of material fact regarding whether defendant knowingly made a false representation that he *928 did not form or manage an issue advocacy organization. *618 Plaintiff appeals from the November 2016 order granting summary judgment in favor of defendant. Defendant cross-appeals from the January 2016 order denying summary judgment on the basis of standing and jurisdiction.
We first address defendant's cross-appeal, in which defendant argues plaintiff lacks standing to bring an FCA complaint because the Commission already investigated the claim, and plaintiff has no direct and independent knowledge of the alleged violation. Because we agree plaintiff lacks direct or independent knowledge of the alleged FCA violation, we affirm the grant of summary judgment on the grounds that plaintiff lacks standing to bring the FCA claim.
We review a ruling on summary judgment de novo, applying the same standard governing the trial court. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405, 98 A.3d 1173 (2014) (citations omitted). Thus, we consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Id. at 406, 98 A.3d 1173 (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995) ). "If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.' " DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333, 64 A.3d 579 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494, 935 A.2d 769 (App. Div. 2007) ). We review issues of law de novo and accord no deference to the trial judge's conclusions on issues of law. Nicholas v. Mynster, 213 N.J. 463, 478, 64 A.3d 536 (2013). Standing is a question of law we review de novo. Courier-Post Newspaper v. Cty. of Camden, 413 N.J. Super. 372, 381, 995 A.2d 306 (App. Div. 2010) (citation omitted).
The FCA provides a person is liable to the State if he or she "[k]nowingly presents or causes to be presented to an employee, *619 officer or agent of the State, ... a false or fraudulent claim for payment or approval." N.J.S.A. 2A:32C-3(a).
"Claim" means a request or demand, under a contract or otherwise, for money, property, or services that is made to any employee, officer, or agent of the State, or to any contractor, grantee, or other recipient if the State provides any portion of the money, property, or services requested or demanded, or if the State will reimburse the contractor, grantee, or other recipient for any portion of the money, property, or services requested or demanded. The term does not include claims, records, or statements made in connection with State tax laws.
[ N.J.S.A. 2A:32C-2.]
The FCA further provides:
c. No action brought under this act shall be based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in an investigation, report, hearing or audit conducted by or at the request of the Legislature or by the news media, unless the action is brought by the Attorney General, or unless the person bringing the action is an original source of the information. For purposes of this subsection, the term "original source" means an individual who has direct and *929 independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the State before filing an action under this act based on the information.
[ N.J.S.A. 2A:32C-9(c).]
Defendant argues plaintiff's complaint is barred under N.J.S.A. 2A:32C-9(c) because plaintiff lacks any direct knowledge of the alleged false claims and relies solely on public information. We find this argument persuasive.
The record clearly shows plaintiff is not the original source of the information supporting the allegations in his complaint. Plaintiff based his claim on defendant's filing of the Commission's form P-2A-a publicly available document. In his complaint, plaintiff alleges he "has direct and independent knowledge of [defendant's] participation in Americans For Prosperity in the four years prior to becoming a candidate for Governor." However, to support these allegations, plaintiff's complaint referenced only publicly available information, such as newspaper articles and government filed forms. In plaintiff's response to defendant's summary judgment motion, plaintiff again presented only indirect knowledge of defendant's alleged false act, including newspaper articles, publicly available forms, and statements from third parties.
*620 Furthermore, we conclude our Legislature did not intend for the FCA to apply to claims such as plaintiff's. In 1986, the United States Congress amended the federal False Claims Act, 31 U.S.C. §§ 3729 to 3733, to limit private person complaints to persons who constitute an "original source" of the information forming the basis of the claim, when the complaint is based on information the news media publicly disclosed. 31 U.S.C. § 3730(e)(4)(A)(iii). The United States Supreme Court found the "original source" language was "an effort to strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits ...." Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280, 295, 130 S.Ct. 1396, 176 L.Ed.2d 225 (2010). In 2008, our Legislature adopted essentially the same "original source" language for its version of the False Claims Act. See N.J.S.A. 2A:32C-9(c). Moreover, Assemblyman Herb Conaway, Jr. described the FCA to the Assembly's Judiciary Committee "as New Jersey's whistle blower statute which tracks the federal law ...." State ex rel. Hayling v. Corr. Med. Servs., Inc., 422 N.J. Super. 363, 372, 28 A.3d 1246 (App. Div. 2011). As a result, we conclude our Legislature likewise intended to avoid "parasitic lawsuits" based on publicly disclosed information.
Plaintiff lacks standing because the matter raised in his complaint was publicly known, investigated, and decided before he filed his FCA complaint. Furthermore, we conclude plaintiff's claim represents the kind of "parasitic" complaint the Legislature sought to avoid. Accordingly, we affirm the grant of summary judgment based on lack of standing.
We also agree with defendant that the Commission maintains jurisdiction over claims arising out of the Reporting Act.
[The Commission] has exclusive jurisdiction regarding reporting violations because of the overarching legislative goals of (1) guaranteeing transparency of campaign contributions and expenditures, (2) ensuring that disclosures of the same *930 be managed and controlled by a single agency, and (3) implementing remedies for violations of the Reporting Act through a uniform and predictable system of sanctions. *621 [ Nordstrom v. Lyon, 424 N.J. Super. 80, 97, 35 A.3d 710 (App. Div. 2012).]
Here, plaintiff's complaint alleges a violation of the FCA, not the Reporting Act; however, the underlying accusation here is a Reporting Act violation. Plaintiff is not permitted to use the FCA to circumvent or re-litigate a Commission decision he disputes. When the Commission made its decision, plaintiff should have filed an appeal from that decision if he disagreed with it. See N.J. State Chamber of Commerce v. N.J. Election Law Enf't Comm'n, 82 N.J. 57, 68, 411 A.2d 168 (1980) (recognizing that a slight private interest is sufficient to provide standing when there is a strong public interest in an issue).
In his appeal, plaintiff argues the trial court erred by granting summary judgment in favor of defendant because there are disputed material issues regarding whether defendant falsely certified he had not participated in an issue advocacy organization when he applied for public campaign funds. In view of our determination that plaintiff lacked standing, we need not address plaintiff's issue concerning that alleged factual dispute. Accordingly, we affirm the trial court's November 18, 2016 order granting summary judgment.
Affirmed.

"Qui tam is short for 'qui tam pro domino rege quam pro se ipso in hac parte sequitur,' which means 'who pursues this action on our Lord the King's behalf as well as his own.' " Rockwell Int'l Corp. v. United States, 549 U.S. 457, 463 n.2, 127 S.Ct. 1397, 167 L.Ed.2d 190 (2007).

Notably, "we review orders and not, strictly speaking, reasons that support them. We have held, in other contexts, that a correct result, even if predicated on an erroneous basis in fact or in law, will not be overturned on appeal." El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 169, 887 A.2d 1170 (App. Div. 2005).

The Commission is a State administrative agency tasked with enforcing the Reporting Act. N.J.S.A. 19:44A-6(b). The Commission is responsible for, among other things, distributing public campaign funds to gubernatorial candidates. N.J.S.A. 19:44A-30.