**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2536-19
                A-2882-19

J&M INTERIORS, INC.,

     Plaintiff-Respondent,

v.

CENTERTON SQUARE OWNERS,
LLC, CENTERTON SQUARE
MANAGER, CORP., PRESTIGE
PROPERTIES & DEVELOPMENT
CO., INC., BURLINGTONCOAT
FACTORY WAREHOUSE,
CORPORATION, d/b/a
BURLINGTON STORES, INC.,
d/b/a BURLINGTON, d/b/a BCF,
d/b/a BURLINGTON COAT
FACTORY, d/b/a BURLINGTON
STORE, d/b/a BURLINGTON
COAT FACTORY WAREHOUSE
OF NEW JERSEY, INC., d/b/a
BURLINGTON COAT FACTORY
DIRECT CORPORATE, UNITED
RENTALS (North America)
J.R. PRISCO, INC., and BREAKER
ELECTRIC, INC.,

     Defendants,

and

PETORE ASSOCIATES, INC., d/b/a
PETORE CONSTRUCTION,

      Defendant-Appellant,

and

UNITED RENTALS (North
America), INC.,

      Defendant/Third-Party
      Plaintiff,

v.

HARVEY ONORE, THEODORE
VITALE a/k/a TED VITALE and
MARY ANN VITALE,

      Third-Party Defendants.
_____

BREAKER ELECTRIC, INC.,
488 MONMOUTH ROAD,
CLARKSBURG, NJ 08510,

      Plaintiff-Respondent,

v.

PETORE ASSOCIATES, INC.,
d/b/a PETORE CONSTRUCTION,
1518 HIGHWAY 138, WALL, NJ
07719,

      Defendant-Appellant,

A-2536-19

and

BURLINGTON COAT
FACTORY WAREHOUSE
CORPORATION, 1830 ROUTE
130 NORTH BURLINGTON,
NJ 0016, and CENTERTON
SQUARE OWNERS, LLC,
546 FIFTH AVENUE, 15TH
FLOOR, NEW YORK, NY 10036,

     Defendants.
_____

Submitted February 22, 2021 – Decided May 18, 2021

Before Judges Messano, Hoffman, and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket Nos. L-1045-18 and L-1125-18

Davidson, Eastman, Munoz, Paone, PA, attorneys for appellants (James A. Paone, II, of counsel and on the briefs; Herschel P. Rose, on the briefs).

Kreiser & Associates, PC, attorneys for respondent J&M Interiors, Inc. (Travis L. Kreiser, on the brief)

Cohen Seglias Pallas Greenhall & Furman, PC, attorneys for respondent Breaker Electric, Inc. (George E. Pallas, Ashling A. Ehrhardt and Sydney Pierce, on the brief).

PER CURIAM

These two related appeals arise out of two breach of contract actions separately brought by subcontractors J&M Interiors, Inc. (J&M) and Breaker Electric, Inc. (Breaker) (collectively, plaintiffs) against defendant Petore Associates, Inc., seeking payment of outstanding balances for work on a construction project.

In A-2536-19, defendant appeals from the October 25, 2019 order awarding J&M $107,285.80 plus interest and fees and the December 20, 2019 order denying defendant's motion for reconsideration. In A-2882-19, defendant appeals the December 20, 2019 order awarding Breaker $209,939.09 plus interest and fees and the February 14, 2020 order denying defendant's motion for reconsideration. In both appeals, defendant raises essentially identical arguments regarding identical contract provisions, contending the trial court erred in granting summary judgment and abused its discretion in declining to reconsider. Following our review, we are satisfied that defendant's arguments lack substantive merit. Accordingly, we consolidate these appeals for the purposes of this opinion and affirm.

I.

In November 2017, Burlington Coat Factory (Burlington) hired defendant as a general contractor to perform renovations at multiple retail stores.

Defendant hired plaintiffs separately to perform certain work at Burlington's store at the Centerton Mall in Mount Laurel.

Appeal A-2882-19 (Breaker)

On November 11, 2017, defendant entered into a written subcontract agreement with Breaker, wherein Breaker agreed to perform certain electrical work at the Centerton Mall store for $275,000. The subcontract provided that "[r]eceipt of payment for Subcontractors work from [Burlington] by [defendant] shall be a condition precedent to the right of the Subcontractor to receive payment from [defendant]" and Breaker "expressly waives and releases all claims or rights to recover lost profit (except for profit on work actually performed) . . . and any other indirect damages, costs or expenses . . . arising out of or related to the Agreement, including the breach thereof by [defendant]."

Over the course of the project, Breaker and defendant entered into change orders to amend the subcontract, adjusting the total value to $331,089. By January 8, 2018, Breaker completed all work set forth in the subcontract and subsequent change orders.

Breaker submitted six invoices to defendant, totaling $331,089; defendant made three payments to Breaker, totaling $88,458. For the second and third payments, Breaker signed a "Partial Lien Waiver" and "Subcontractor/Supplier

5

Partial Waiver of Liens & Release" (the waivers), wherein it "acknowledged that the amount of payments received to the date of the waiver represents the current amount agreed to be due" and that it "[had] no claims for additional work, damages, or for any other reasons whatsoever." In addition, Breaker waived and released

> all liens or rights to lien, claims, and demands of every kind whatsoever now existing for work, labor or materials furnished to Owner and acknowledges that all payments heretofore and/or contemporaneously received have been and are accepted in full satisfaction of the liens or right to lien waived hereunder and all the work performed up to the Date of Requisition.

After the third payment, Breaker received no further payments toward the remaining balance of $209,939.09. On May 31, 2018, Breaker filed suit against defendant, alleging breach of contract, unjust enrichment, and violation of the Prompt Payment Act (PPA), N.J.S.A. 2A:30A-2.

On November 22, 2019, Breaker moved for summary judgment against defendant before Judge Aimee Belgard. Opposing summary judgment, defendant argued Breaker waived its claims to the full payment and nonetheless was not entitled to full payment until defendant received full payment from Burlington. By this time, Burlington had paid defendant the full contract price,

except for a contractually designated ten percent retainage. Defendant opted to accept the judge's tentative decision in lieu of arguing the motion.

On December 20, 2019, the judge issued an order granting Breaker's motion in its entirety. In a well-reasoned written opinion, the judge rejected each of defendant's arguments, finding (1) the plain language of the waivers do not release defendant's obligation to pay the full amount; (2) no mutual intent for the waivers to amount to accord and satisfaction; and (3) defendant's payment from Burlington satisfied the condition precedent to trigger full payment of Breaker by defendant. The judge awarded Breaker $209,939.09 plus interest, reasonable costs, and attorney's fees, pursuant to the PPA.

On January 13, 2020, defendant filed a motion for reconsideration of the summary judgment order. On February 14, 2020, Judge Belgard issued an order denying defendant's motion and provided an additional written opinion, finding no basis to alter her original decision. This appeal followed.[1]

---

[1] Defendant's appeal of the December 20, 2019 summary judgment order is untimely. Rule 2:4-1(a) requires appeals from final judgments "be taken within 45 days of their entry." Rule 2:4-3(e) provides that the time to appeal is tolled by "the timely filing and service" of a motion for reconsideration. Accordingly, the forty-five days for appealing the summary judgment order began running on December 20, 2019 but tolled when defendant filed its reconsideration motion on January 13, 2020; at that time, twenty-four of the allotted forty-five days had elapsed. The time to appeal resumed when Judge Belgard denied the

A-2536-19

Appeal A-2536-19 (J&M)

On November 15, 2017, defendant entered into a written subcontract agreement with J&M, wherein J&M agreed to perform certain carpentry work at the Centerton Mall store for $203,000.  The relevant provisions of J&M's subcontract are materially identical to those in Breaker's subcontract.  Over the course of the project, J&M and defendant entered into change orders to amend the subcontract, adjusting the total value to $221,576.20.  By February 15, 2018, J&M had completed all work set forth in the subcontract and subsequent change orders.

J&M submitted five invoices to defendant, totaling $221,576.20; defendant made three payments to J&M, totaling $114,290.  For each of the three payments, J&M signed partial waivers of liens.  The relevant provisions of the partial waivers are materially identical to those signed by Breaker.

After the third payment, J&M received no further payment from defendant toward the remaining $107,285.80 balance.  On May 18, 2018, J&M filed suit

---

reconsideration motion on February 14, 2020; with twenty-one days remaining, defendant was required to appeal the summary judgment order no later than March 6, 2020.  Defendant filed this appeal on March 23, 2020.  Nonetheless, we address the merits of this summary judgment order on appeal.

against defendant, alleging breach of contract, unjust enrichment, and violation of the PPA.

On September 26, 2019, J&M moved for summary judgment against defendant, which was followed by defendant's cross-motion for summary judgment. On October 22, 2019, Judge Belgard heard oral argument on the motions. On October 25, 2019, the judge issued an order, accompanied by another well-reasoned written opinion, granting J&M's motion for essentially the same reasons she granted Breaker's motion – any conditions precedent for defendant to pay J&M were met and J&M did not waive its right to full payment. The judge awarded J&M $107,285.80 plus interest, reasonable costs, and attorney's fees, pursuant to the PPA.

On November 22, 2019, defendant filed a motion for reconsideration of the summary judgment order. On December 20, 2019, Judge Belgard issued an order denying defendant's motion and provided an additional written opinion, finding that defendant "failed to satisfy its burden to demonstrate the [c]ourt entered its decision on palpably incorrect or irrational basis or show the [c]ourt

either did not consider, or failed to appreciate the significance of probative, competent evidence." This appeal followed.[2]

In this consolidated opinion, we restate the issues raised on these appeals as follows: (1) whether the subcontracts conditioned defendant's obligation to pay plaintiffs on defendant receiving full payment from Burlington; (2) whether plaintiffs waived their rights to full payment and to assert PPA claims in the subcontracts; and (3) whether plaintiffs' execution of partial waivers of liens and defendant providing partial payment created a valid accord and satisfaction.

II.

We review the trial court's grants of summary judgment de novo, "applying the same standard governing the trial court." Brennan v. Lonegan, 454 N.J. Super. 613, 618 (2018) (citing Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014)). R. 4:46-29(c) provides that the court should grant summary judgment:

> [I]f the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law. An issue of fact is genuine only if, considering the

---

[2] Defendant's appeal of the October 25, 2019 summary judgment order is similarly untimely. See R. 2:4-1(a), (e). Nonetheless, we also address the merits of this summary judgment order.

A-2536-19

burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.

The court need only submit an issue to the trier of fact when the non-moving party has presented sufficient evidence such that a "rational factfinder" could "resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). However, "[i]f there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of Rule 4:46-2." Ibid. Ultimately, "when the evidence 'is so one-sided that one party must prevail as a matter of law,' the trial court should not hesitate to grant summary judgment." Ibid. (internal citations omitted) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

We review the trial court's denial of motion for reconsiderations under an abuse of discretion standard. Cypress Point Condominium Ass'n, Inc. v. Adria Towers, L.L.C., 441 N.J. Super. 369, 372 (App. Div. 2015), aff'd, 226 N.J.403 (2016) (citing Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996)). The court should only grant a motion for reconsideration when "1) the Court has expressed its decision based upon a palpably incorrect or irrational basis, or 2)

11

it is obvious that the Court either did not consider, or failed to appreciate the significance of probative, competent evidence[,]" or 3) "if a litigant wishes to bring new or additional information to the Court's attention which it could not have provided on the first application[.]" Cummings, 295 N.J. Super. at 384 (quoting D'Atria v. D'atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990). The court should not reconsider its decision "merely because of [a litigant's] dissatisfaction with a decision of the Court." D'Atria, 242 N.J. Super. at 401. Rather, the "litigant must initially demonstrate that the Court acted in an arbitrary, capricious, or unreasonable manner, before the Court should engage in the actual reconsideration process." Ibid.

### A.

We first address defendant's argument that the trial court erred in interpreting the following provision in plaintiffs' subcontracts: "Receipt of payment for Subcontractors work from [Burlington] by [defendant] shall be a condition precedent to the right of the Subcontractor to receive payment from [defendant]." Defendant contends this provision conditioned defendant's obligation to pay plaintiffs on Burlington's full payment to defendant. Defendant further contends the condition triggering payment to plaintiffs never occurred because Burlington never paid defendant the full contract price, and

therefore defendant was not required to perform. At the very least, defendant maintains, this provision is ambiguous, and the trial court erroneously determined its meaning on summary judgment.

The interpretation and construction of a contract is a question of law, "subject to de novo review by an appellate court." Kieffer v. Best Buy, 205 N.J. 213, 222 (2011). "The interpretation of a contract is ordinarily a legal question for the court and may be decided on summary judgment unless 'there is uncertainty, ambiguity or the need for parol evidence in aid of interpretation[.]'" Celanese Ltd. v. Essex County Imp. Authority, 404 N.J. Super. 514, 528 (App. Div. 2009) (quoting Great Atl. & Pac. Tea Co. v. Checchio, 335 N.J. Super. 495, 502 (App. Div. 2000)).

When parties dispute the meaning of a contract, it is the court's task to "discern and implement the common intention of the parties." Globe Motor Co. v. Igdalev, 225 N.J. 469, 483 (2016) (quoting Pacifico v. Pacifico, 190 N.J. 258, 266 (2007)). "In interpreting a contract, a court must try to ascertain the intention of the parties as revealed by the language used, the situation of the parties, the attendant circumstances, and the objects the parties were striving to attain." Celanese, 404 N.J. Super. at 528. When a contract's terms are clear and unambiguous, the court must enforce those terms as written, using their plain

and ordinary meaning, as those "words presumably will reflect the parties' expectations." Kieffer, 205 N.J. at 223.

"An ambiguity in a contract exists if the terms of the contract are susceptible to at least two reasonable alternative interpretations[.]" Schor v. FMS Financial Corp., 357 N.J. Super. 185, 191 (App. Div. 2002) (alteration in original) (quoting Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997)). "The court should examine the document as a whole and the 'court should not torture the language of [a contract] to create ambiguity." Ibid. (alteration in original) (quoting Nester, 301 N.J. Super. at 210).

Applying these principles and viewing the subcontracts in the light most favorable to defendant, defendant's argument fails. The subcontracts condition defendant's obligation to pay plaintiffs on defendant's "[r]eceipt of payment . . . from [Burlington]." Nothing in the subcontracts' plain language requires defendant to receive full or final payment from Burlington before paying plaintiffs. At most, the subcontracts condition defendant's payment to plaintiffs on defendant's receipt of total payment for plaintiffs' work. Plaintiffs performed all work under their subcontracts. Defendant received total payment for the plaintiffs' work, as the only money not paid by Burlington to defendant was the

A-2536-19

contractually designated retainage. Therefore, defendant was obligated to make full payment to plaintiffs.

B.

Next, we address defendant's argument that the trial court erred in interpreting the following provision in the plaintiffs' subcontracts: "[plaintiffs] expressly waives and releases all claims or rights to recover lost profit (except for profit on work actually performed) . . . and any other indirect damages, costs or expenses in any way arising out of or related to the Agreement, including the breach thereof by [defendant]." Defendant contends plaintiffs' claims under the PPA are claims for "indirect damages . . . arising out of" the subcontracts and, therefore, plaintiffs waived their claims when they signed their subcontracts. Defendant further contends the provision is at least ambiguous regarding this waiver of rights, and the trial court erroneously construed this ambiguity in favor of plaintiffs instead of defendant.

The PPA grants subcontractors a right to sue if their general contractor fails to pay "within [ten] calendar days of the receipt of each periodic payment, final payment or receipt of retainage monies, the full amount received for the work of the subcontractor . . . based on the work completed . . . under the applicable contract." N.J.S.A. 2A:30A-2(b). That said, "individuals may waive

15

a right, without regard to whether its source is constitutional, statutory, contractual, or otherwise, so long as the individual had full knowledge of the right and intentionally surrendered it." General Motors Acceptance Corp. v. Cahill, 375 N.J. Super. 553, 566 (App. Div. 2005). "[U]nder New Jersey law, any contractual 'waiver-of-rights provision must reflect that [the party] has agreed clearly and unambiguously' to its terms." Atalese v. U.S. Legal Services Group, L.P., 219 N.J. 430, 443 (2014) (quoting Leodori v. Cigna Corp., 175 N.J. 293, 302 (2003)).

In order for a party to agree to a waiver-of-rights provision clearly and unambiguously, a party must "have full knowledge of his legal rights and intent to surrender those rights." Atalese, 219 N.J. at 442 (quoting Knorr v. v. Smeal, 178 N.J. 169, 177 (2003)). The waiving party must also be aware of the ramifications of waiving his or her rights. Id. at 443. Further, a "clause depriving a citizen of access to the courts should clearly state its purpose" and its language should be clear and unambiguous. Id. at 444, 445 (quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001)). When a court interprets a waiver-of-right provision, "contractual language alleged to constitute a waiver will not be read expansively." Garfinkel, 168 N.J. at 132 (quoting Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High

A-2536-19

Sch. Bd. of Educ., 78 N.J. 122, 140 (1978)).  Such provision need not "list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights" but should at least inform the waiving party that it agrees to waive all statutory claims arising out of the contractual relationship.  Garfinkel, 168 N.J. at 135.  It should also be noted that a "[w]aiver of a statutory right . . . will not be allowed where it 'would violate a public policy expressed in the statute.'"  Cahill, 375 N.J. at 566 (quoting City Hall Bldg. & Loan Ass'n. of Newark v. Florence Realty Co., 110 N.J. Eq. 12, 14 (Ch. 1932).

Here, even if a complete waiver of the right to sue is permissible on public policy grounds, the provision in question fails to constitute an unambiguous and clear waiver of plaintiffs' statutory rights.  The waiver provision in the subcontract did not specifically state that plaintiffs waived their rights to any or all statutory rights associated with the subcontracts.  We are satisfied the record lacks any evidence to support defendant's claim that plaintiffs knowingly or intentionally waived their statutory rights under the PPA.  These provisions are not ambiguous, and the trial court appropriately determined their meaning as a matter of law on summary judgment.

C.

Finally, we address defendant's argument that plaintiffs waived their rights to full payment by signing the partial waivers of release. Plaintiffs each signed waivers releasing "all liens or rights to lien, claims, and demands of every kind whatsoever now existing for work, labor or material furnished to the Owner" and "acknowledging that the amount of payments received to the date of this waiver represents the current amount agreed to be due to it in accordance with its agreement and work completed[.]"

Defendant contends that, on summary judgment, the trial court should have interpreted plaintiffs' signing of the partial waivers as accepting less payment than owed and waiving all claims. Defendant maintains that the plain language of these waivers released defendant of its obligations to make full payment under the subcontracts. In addition, defendant contends that the trial court erred in declining to consider the accord and satisfaction argument raised in its motion for reconsideration because defendant properly brought it to the court's attention in its opposition to plaintiffs' summary judgment motions.

Defendant's arguments lack merit. Generally, any agreement to modify an existing contract "must be based upon new or additional consideration" from both parties. County of Morris v. Fauver, 153 N.J. 80, 100 (1998) (citing Ross v. Orr, 3 N.J. 277, 282 (1949)); see also Decker v. George W. Smith & Co., 88

N.J.L. 630, 632, 96 A. 915 (E. & A. 1916) ("A consideration is necessary to render an accord and satisfaction valid."). "[A] promise to perform a pre-existing duty" is insufficient consideration to modify the terms of a contract. Segal v. Lynch, 211 N.J. 230, 253 (2012) (citing Williston on Contracts § 7:37 (4th ed. 2008)). In other words, a subsequent promise to fulfil an obligation already required in a contract cannot be considered new or additional consideration.

Here, defendant did not provide new or additional consideration in exchange for plaintiffs' partial waivers. Plaintiffs agreed to release of their liens, but plaintiffs did not "'get something' out of the exchange." Oscar v. Simeonidis, 352 N.J. Super. 476, 484 (App. Div. 2002) (quoting Continental Bank of Pennsylvania v. Barclay Riding Academy, Inc., 93 N.J. 153, 170 (1983). Therefore, the waivers do not alter defendant's obligation to pay plaintiffs under the subcontracts.

The trial court appropriately granted summary judgment and we find no error in the denial of defendant's motion for reconsideration.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2536-19