**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2731-20
                    A-2733-20

THE STATE OF NEW JERSEY
ex rel. HEALTH CHOICE
GROUP, LLC,

      Plaintiff-Appellant,

v.

BAYER CORPORATION and
BAYER HEALTHCARE
PHARMACEUTICALS, INC.,

      Defendants-Respondents.

_____

THE STATE OF NEW JERSEY
ex rel. HEALTH CHOICE
ALLIANCE, LLC,

      Plaintiff-Appellant,

v.

ELI LILLY AND COMPANY,
INC.,

      Defendant-Respondent.

_____

| |
|---|
| **APPROVED FOR PUBLICATION** |
| **March 1, 2024** |
| **APPELLATE DIVISION** |

Argued November 14, 2023 – Decided March 1, 2024

Before Judges Gilson, Berdote Byrne, and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket Nos. L-3311-20 and L-3312-20.

Radu A. Lelutiu (McKool Smith PC) of the New York bar, admitted pro hac vice, and Ruby Khallouf argued the cause for appellant Health Choice Group, LLC, in A-2731-20 and appellant Health Choice Alliance, LLC, in A-2733-20 (Florio Perrucci Steinhardt Cappelli Tipton & Taylor, LLC, Radu A. Lelutiu, W. Mark Lanier (The Lanier Law Firm) of the Texas bar, admitted pro hac vice, Zeke DeRose III (The Lanier Law Firm) of the Texas bar, admitted pro hac vice, and Eric B. Halper (McKool Smith PC) of the New York bar, admitted pro hac vice, attorneys; Brian Russell Tipton, Ruby Khallouf, W. Mark Lanier, Zeke DeRose III, Eric B. Halper, and Radu A. Lelutiu, of counsel and on the briefs).

Lawrence S. Lustberg argued the cause for respondents Bayer Corporation and Bayer Healthcare Pharmaceuticals, Inc., in A-2731-20 (Gibbons PC, Matthew J. O'Connor (Covington & Burling LLP) of the District of Columbia and Massachusetts bars, admitted pro hac vice, Matthew F. Dunn (Covington & Burling LLP) of the District of Columbia and Maryland bars, admitted pro hac vice, and Kristin M. Cobb (Covington & Burling LLP) of the District of Columbia and Virginia bars, admitted pro hac vice, attorneys; Lawrence S. Lustberg, Matthew J. O'Connor, Matthew F. Dunn, and Kristin M. Cobb, of counsel and on the brief).

Allon Kedem (Arnold & Porter Kaye Scholer LLP) of the District of Columbia and New York bars, admitted

pro hac vice, argued the cause for respondent Eli Lilly and Company, Inc., in A-2733-20 (Faegre Drinker Biddle & Reath LLP, Michael A. Rogoff (Arnold & Porter Kaye Scholer LLP) of the New York bar, admitted pro hac vice, Sara L. Shudofsky (Arnold & Porter Kaye Scholer LLP) of the New York bar, admitted pro hac vice, and Debra E. Schreck, attorneys; Jeffrey S. Jacobson, Michael Charles Zogby, Michael A. Rogoff, Sara L. Shudofsky, and Debra E. Schreck, of counsel and on the brief).

The opinion of the court was delivered by

GILSON, P.J.A.D.

These two appeals, which we consolidate for purposes of this opinion, arise out of separate, but similar, qui tam lawsuits filed by plaintiffs Health Choice Group, LLC (HCG) and Health Choice Alliance, LLC (HCA) (collectively, plaintiffs or Relators) on behalf of the State of New Jersey. HCG sued defendants Bayer Corporation and Bayer Healthcare Pharmaceuticals, Inc. (collectively, Bayer), and HCA sued Eli Lilly and Company, Inc. (Lilly). Plaintiffs alleged that Bayer and Lilly (collectively, defendants) had violated the New Jersey False Claims Act (NJFC Act), N.J.S.A. 2A:32C-1 to -15, -17 to -18, by engaging in unlawful marketing schemes that caused false claims to be submitted to and paid by government-funded healthcare programs.

Defendants moved to dismiss plaintiffs' complaints on several grounds, including under Rule 4:6-2(e) and Rule 4:5-8(a). The trial court granted those

3

motions, holding that plaintiffs' claims were barred by the public disclosure and first-to-file provisions in the NJFC Act. The trial court also ruled that plaintiffs had failed to plead fraud with the particularity required by Rule 4:5-8(a). Plaintiffs appeal from the orders dismissing their complaints with prejudice. Because the allegations in plaintiffs' complaints had previously been publicly disclosed and because plaintiffs were not the original source of that information, we hold that plaintiffs' complaints were properly dismissed under the public disclosure bar of the NJFC Act. See N.J.S.A. 2A:32C-9(c). Accordingly, we affirm on that basis and do not address the alternative grounds for the dismissals.

I.

Plaintiffs are subsidiaries of the National Health Care Analysis Group (the NHCA Group), a partnership of limited liability companies established by investors and former bankers "for the purpose of filing qui tam actions alleging instances of fraud in medicine and pharmaceuticals." United States ex rel. Health Choice All., L.L.C. v. Eli Lilly & Co., 4 F.4th 255, 259 (5th Cir. 2021) (italicization omitted). The federal False Claims Act (FCA), 31 U.S.C. §§ 3729-33, and similar state statutes, including the NJFC Act, permit private persons, called "relators," to bring qui tam suits on behalf of the government and, if the

relators prove that false claims were paid by the government, receive a portion of any recovery. 31 U.S.C. § 3730(b), (d)(2); N.J.S.A. 2A:32C-5(b), -7(d).

In June 2017, plaintiffs filed separate, sealed qui tam actions against Bayer and Lilly in the United States District Court for the Eastern District of Texas (the Federal Actions). Both actions were filed on behalf of the United States and thirty-one states, including New Jersey, and alleged that defendants had violated the FCA and similar state false claims statutes, including the NJFC Act. At approximately the same time, affiliates of plaintiffs filed numerous other qui tam actions against other pharmaceutical companies based on similar allegations.[1]

In the Federal Actions, plaintiffs alleged that Bayer and Lilly had used unlawful marketing schemes to induce healthcare providers to prescribe their drugs, thereby causing billions of dollars of false claims to be submitted to and paid by government-administered programs, primarily Medicaid and Medicare. Plaintiffs represented in their complaints that agents of the NHCA Group had conducted multi-part investigations, which included interviewing various

---

[1] Another subsidiary of the NHCA Group sued Gilead Sciences, Inc. first in the federal Eastern District of Texas and later in New Jersey. In a separate unpublished opinion, we have affirmed the dismissal of the claims against Gilead. See State ex rel. Health Choice Advocs., LLC v. Gilead Scis., Inc., No. A-2736-20 (App. Div. 2024).

individuals who were familiar with defendants' practices and examining Medicare and Medicaid data for defendants' products. Through those investigations, plaintiffs contend they discovered that Bayer and Lilly were engaging in three marketing schemes that violated the FCA and the NJFC Act.

The first two schemes involved providing free nurse services (the "Free Nurse Scheme") and reimbursement support services (the "Support Services Scheme") to healthcare providers who wrote prescriptions for Bayer's and Lilly's drugs. Bayer and Lilly allegedly allowed prescribers who prescribed their drugs to use free "nurse educators" to provide follow-up care and monitoring for patients, thereby relieving the prescribers of the responsibility to provide those services. Bayer and Lilly also allegedly provided free support services to assist providers who prescribed patients their drugs. These services assisted providers with determining and obtaining insurance coverage for patients for the cost of the drugs and obtaining prior authorization. Plaintiffs asserted that those free services induced providers to prescribe Bayer's and Lilly's drugs over competitors' drugs and caused false claims to be submitted to and paid for by government programs.

In the third scheme, Bayer and Lilly allegedly used registered nurses to promote their drugs (the "White Coat Marketing Scheme"). The registered

6

nurses, who were independent contractors, used their professional credentials to gain access to providers. Bayer and Lilly allegedly paid those nurses to recommend their drugs, and plaintiffs alleged that those payments were illegal kickbacks.

In October 2017, the United States and all named states, including New Jersey, declined to intervene in the Federal Actions, and the complaints were then unsealed and served on Bayer and Lilly. Shortly thereafter, Bayer and Lilly moved to dismiss the claims in the Federal Actions. Plaintiffs then filed an amended complaint, and defendants again moved to dismiss.

Before the federal court ruled on defendants' motions, the United States moved to dismiss the Federal Actions. The United States offered two reasons to support its request for dismissal: (1) "the allegations . . . lack[ed] sufficient merit to justify the cost of investigation and prosecution[;]" and (2) "further litigation . . . [would] undermine practices that benefit federal healthcare programs by providing patients with greater access to product education and support." Eli Lilly, 4 F.4th at 267. The United States also asserted that the drug education services provided by Bayer and Lilly "benefit[ed] federal healthcare programs" and were lawful. Id. at 268. New Jersey took no position on the United States' motion to dismiss the Federal Actions.

In September 2019, the court overseeing the Federal Actions dismissed with prejudice plaintiffs' FCA claims but dismissed without prejudice plaintiffs' state law claims, including the claims based on the NJFC Act. Shortly thereafter, plaintiffs appealed the dismissal of their FCA claims. They did not challenge the dismissal without prejudice of their state law claims.

In July 2021, the United States Court of Appeals for the Fifth Circuit affirmed the dismissal of the FCA claims against Bayer and Lilly in the Federal Actions. Id. at 269. The Fifth Circuit held that the United States' dismissal of the action was proper, id. at 267, and plaintiffs did not show the government had acted arbitrarily, capriciously, or illegally in seeking the dismissal, id. at 269.

In October 2019, while the Federal Actions were on appeal, plaintiffs filed these two qui tam actions under seal on behalf of the State of New Jersey. When New Jersey declined to intervene, both complaints were unsealed in April 2020.

The complaints filed in New Jersey alleged the same marketing schemes identified in the Federal Actions and contended that those schemes resulted in false claims being submitted to and paid by New Jersey in violation of the NJFC Act. In that regard, plaintiffs' complaints against Bayer and Lilly filed in New Jersey were based on the Free Nurse Scheme, the Support Services Scheme, and the White Coat Marketing Scheme.

Bayer and Lilly moved to dismiss plaintiffs' complaints under Rule 4:46-2 on three grounds. They argued that the claims filed in New Jersey were (1) barred by the public disclosure provision in the NJFC Act, N.J.S.A. 2A:32C-9(c); (2) barred by the first-to-file provision, N.J.S.A. 2A:32C-5(i); and (3) inadequate because they did not plead fraud with the particularity required by Rule 4:5-8(a). The trial court heard arguments on both motions to dismiss.

On April 22, 2021, the trial court issued two orders and a consolidated opinion granting Bayer's and Lilly's motions to dismiss with prejudice. The trial court based its rulings on three grounds. First, the court found that the allegations in plaintiffs' complaints filed in New Jersey were based on transactions previously publicly disclosed in the Federal Actions, as well as in newspaper articles. The court then determined that plaintiffs did not qualify as the original source of the information as required by the NJFC Act. See N.J.S.A. 2A:32C-9(c).

Second, the trial court held that plaintiffs' complaints should be dismissed under the NJFC Act's first-to-file bar. That bar prohibits a plaintiff from bringing a related action based on facts underlying a pending NJFC Act action. N.J.S.A. 2A:32C-5(i). The trial court found that the allegations in the complaints filed in New Jersey were like the allegations in the then-pending

Federal Actions. In that regard, the trial court issued its rulings several months before the Fifth Circuit affirmed the dismissal of the federal FCA claims in the Federal Actions.

Finally, the trial court found that both complaints failed to plead fraud with the specificity required by Rule 4:5-8(a). In particular, the trial court noted that plaintiffs' complaints failed to allege specific facts showing that the schemes increased prescriptions of Bayer and Lilly products or that any prescriptions were issued for reasons other than valid medical reasons.

Plaintiffs filed separate appeals from the orders dismissing their New Jersey complaints with prejudice.

II.

In both appeals, plaintiffs make the same three arguments. They contend that the trial court erred in holding that (1) the public disclosure bar applied; (2) the first-to-file bar applied; and (3) the complaints failed to plead fraud with particularity. Regarding their arguments about pleading fraud with particularity, plaintiffs contend that the court compounded its error by dismissing the complaints with prejudice because they should have been allowed to amend their complaints.

A-2731-20

Appellate courts review orders granting motions to dismiss for failure to state a claim under a de novo standard. Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)). In doing so, we "examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Ibid. (quoting Dimitrakopoulos, 237 N.J. at 107). "The complaint must be searched thoroughly 'and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.'" Ibid. (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)).

We hold that the complaints were properly dismissed with prejudice under the NJFC Act's public disclosure bar. In that regard, we point out that the public disclosure bar involves a question of standing. Relators lack standing to bring claims under the NJFC Act when the claims are based on allegations or transactions that have already been publicly disclosed and the relators were not the original source of the information. See Brennan v. Lonegan, 454 N.J. Super. 613, 620 (App. Div. 2018).

Standing "involves a threshold determination of the court's power to hear the case." Watkins v. Resorts Int'l Hotel & Casino, Inc., 124 N.J. 398, 418 (1991). Although our courts "have historically taken a much more liberal approach on the issue of standing than have the federal cases," Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y., 58 N.J. 98, 101 (1971), the public disclosure bar in the NJFC Act uses the word "shall," which denotes that it is a mandatory bar when applicable. See Aponte-Correa v. Allstate Ins. Co., 162 N.J. 318, 325 (2000) (explaining that a statute's use of "shall" generally means that the statutory provision is mandatory).

"Whether a party has standing to pursue a claim is a question of law subject to de novo review." Cherokee LCP Land, LLC v. City of Linden Plan. Bd., 234 N.J. 403, 414 (2018); accord Brennan, 454 N.J. Super. at 618. An appellate court therefore owes no "special deference" to the "trial court's interpretation of the law and the legal consequences that flow from established facts." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

A.    The NJFC Act.

The NJFC Act imposes civil penalties on any person who "[k]nowingly presents . . . a false or fraudulent claim for payment or approval." N.J.S.A.

2A:32C-3(a). The NJFC Act is modeled on the FCA and is intended to protect the government, and ultimately taxpayers, from paying false claims. See State ex rel. Hayling v. Corr. Med. Servs., Inc., 422 N.J. Super. 363, 372 (App. Div. 2011) (quoting Assemblyman Herb Conaway, Jr., who described the NJFC Act to the Assembly Judicial Committee "as New Jersey's [whistleblower] statute which tracks the federal law that allows private individuals . . . to sue on behalf of the government to recover the losses to the public"). A "claim" is defined to include a request or demand for money, property, or services that is "made to any employee, officer, or agent of the State" if the State provides any portion of the money, property, or services requested. N.J.S.A. 2A:32C-2.

The NJFC Act precludes actions by private persons based on allegations or transactions that have previously been publicly disclosed, unless "the person bringing the action is an original source of the information." N.J.S.A. 2A:32C-9(c). In construing the FCA, the United States Supreme Court has held that the "original source" language was "an effort to strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits." Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280, 295 (2010). Because our Legislature has adopted "essentially the same 'original source' language" for the NJFC Act, we have previously

concluded "our Legislature likewise intended to avoid 'parasitic lawsuits' based on publicly disclosed information." Brennan, 454 N.J. Super. at 620.

B.      The 2023 Amendment to the NJFC Act.

In 2023, the New Jersey Legislature amended several sections of the NJFC Act, including the definition of "original source." L. 2023, c. 73.  So, the initial question we must decide is which definition applies to plaintiffs' actions, which were brought in 2019, dismissed by the trial court in 2021, and are currently on appeal.  That question, in turn, depends on whether the 2023 amendments apply retroactively.

When the Legislature first adopted the NJFC Act in 2008, it used substantially the same "original source" definition that was used in the FCA. Brennan, 454 N.J. Super. at 620.  Thus, "original source" was defined as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the State before filing an action under this act based on the information." N.J.S.A. 2A:32C-9(c) (2008).

In 2010, Congress amended the FCA and defined "original source" to mean:

> [A]n individual who either (i) prior to a public
> disclosure under subsection (e)(4)(a), has voluntarily

disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

[31 U.S.C. § 3730(e)(4)(B).]

As noted, in 2023, our Legislature amended the definition of "original source" to track the federal definition. Consequently, original source is now defined to mean:

> [A]n individual who either (1) prior to a public disclosure as described in this paragraph has voluntarily disclosed to the State the information on which allegations or transactions in a claim are based, or (2) has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the State before filing an action under this act.
>
> [N.J.S.A. 2A:32C-9(c).]

In the related legislative history, the Assembly explained it was revising the NJFC Act "to comply with certain provisions in federal law" because "[c]ompliance would make the State eligible for greater recoveries in Medicaid fraud cases." Assemb. Budget Comm. Statement to A. 5584 (June 27, 2023). The Assembly explained that,

> [u]nder federal law, a state is entitled to enhanced recovery in Medicaid fraud cases if the Inspector General in the federal Department of Health and Human Services determines that the state has a False Claims Act that is "at least as effective" as the [FCA] in facilitating these whistleblower actions. Presently, the Inspector General has determined that the [NJFC Act] is not "at least as effective" as the [FCA], and has recommended specific revisions. This bill would implement the Inspector General's recommendations.
>
> [Ibid.]

The Legislature adopted the amendments on June 30, 2023, and stated that they were to "take effect immediately." L. 2023, c. 73, § 11.

"Settled rules of statutory construction favor prospective rather than retroactive application of new legislation." Pisack v. B & C Towing, Inc., 240 N.J. 360, 370 (2020) (quoting James v. N.J. Mfrs. Ins. Co., 216 N.J. 552, 563 (2014)); see also Twiss v. State, Dep't of the Treasury, 124 N.J. 461, 466 (1991) (explaining that "[g]enerally, courts favor prospective application of statutes"). "In determining whether a statute applies retroactively," the primary goal is to determine whether the Legislature intended the amendment to be prospective or retrospective in application. Pisack, 240 N.J. at 370; Twiss, 124 N.J. at 466-67. Accordingly, our Supreme Court has explained that there are "three scenarios that justify retroactive application of a legislative amendment: '(1) when the Legislature expresses its intent that the law apply retroactively, either expressly

16

or implicitly; (2) when an amendment is curative; or (3) when the expectations of the parties so warrant.'" Pisack, 240 N.J. at 370 (quoting James, 216 N.J. at 563); see also Gibbons v. Gibbons, 86 N.J. 515, 522 (1981) (explaining that amendments will be applied retroactively when it is "necessary to make the statute workable or to give it the most sensible interpretation").

The 2023 amendments to the NJFC Act used language clearly indicating that the Legislature intended the amendments to apply prospectively. In that regard, the Legislature stated that the amendments "shall take effect immediately." L. 2023, c. 73, § 11. "Our Supreme Court has consistently held that an amendment that is to take effect immediately is to be applied only prospectively." State v. Rosado, 475 N.J. Super. 266, 276 (App. Div. 2023); see also Pisack, 240 N.J. at 371 (explaining that "the Legislature provided that the 2018 amendatory legislation 'shall take effect immediately.' Those 'words bespeak an intent contrary to, and not supportive of, retroactive application.'" (internal citation omitted) (quoting Cruz v. Cent. Jersey Landscaping, Inc., 195 N.J. 33, 48 (2008))).

The amendments to the NJFC Act were also not curative. Although the amendments were designed to bring the NJFC Act into compliance with the

FCA, the Legislature explained that the goal was to enhance recoveries in Medicaid fraud cases.

Federal courts have consistently construed the 2010 amendment to the FCA to apply prospectively. See, e.g., United States ex rel. Zizic v. Q2Administrators, LLC, 728 F.3d 228, 232 n.3 (3d Cir. 2013); United States ex rel. Poteet v. Bahler Med., Inc., 619 F.3d 104, 107 n.2 (1st Cir. 2010); United States ex rel. May v. Purdue Pharma L.P., 737 F.3d 908, 914-18 (4th Cir. 2013); Bellevue v. Universal Health Servs. of Hartgrove, Inc., 867 F.3d 712, 717-18 (7th Cir. 2017); Prather v. AT&T, Inc., 847 F.3d 1097, 1103 (9th Cir. 2017). Accordingly, we presume that the New Jersey Legislature was aware of the federal law concerning the prospective application of the new definition of original source and meant to likewise apply the NJFC Act amendments prospectively.

C.  Whether the Public Disclosure Provision Bars Plaintiffs' New Jersey Actions.

The public disclosure bar in the NJFC Act prevents a private person from bringing a qui tam action that is based upon publicly disclosed allegations or transactions "unless the person bringing the action is an original source of the information." N.J.S.A. 2A:32C-9(c). Accordingly, the public disclosure provision bars an action by a private person when (1) there has been a prior

18

public disclosure of the alleged fraud; and (2) the person's lawsuit is based upon "substantially the same allegations or transactions[;]" unless (3) the person is an original source of the information. Ibid.

There is no dispute that there was a prior disclosure of the fraud. Plaintiffs first sued Bayer and Lilly in federal court in Texas, and the complaints in those actions were unsealed in 2017. The NJFC Act identifies allegations made in a "criminal, civil, or administrative hearing in which the State or an agent of the State is a party" as prior disclosures. Ibid. Because the term "hearing" is used identically in the NJFC Act and FCA, we adopt the well-established federal rule that the public disclosure bar applies even when the prior complaint was filed by the same relator. See, e.g., Poteet, 619 F.3d at 113 (holding that the public disclosure bar applies when relator's own lawsuit was the source of the prior public disclosure and noting that after a relator has "blow[n] the whistle on fraud . . . . there seems to be little need to encourage them to give the whistle a second toot"); United States ex rel. Schweizer v. Canon, Inc., 9 F.4th 269, 275-76 (5th Cir. 2021) (relator's prior complaint barred the subsequent action).

There is also no dispute that plaintiffs' allegations in the New Jersey actions are substantially the same allegations they made in the Federal Actions. The complaints in the New Jersey actions identified the same three schemes

identified in the Federal Actions and were brought against the same defendants. Although the New Jersey actions were more limited in scope in that they did not involve claims under the FCA, they included the same claims concerning New Jersey because New Jersey was originally named as a plaintiff in the Federal Actions.

Therefore, a critical issue in these appeals is whether plaintiffs are the original source of the allegations. In 2019, original source was defined to mean "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the State before filing an action under this act based on the information." N.J.S.A. 2A:32C-9(c) (2010).

Bayer and Lilly argue that plaintiffs are not "individuals" that can qualify as an original source under the NJFC Act because they are limited liability companies, not natural persons. No New Jersey caselaw analyzes the meaning of the word "individual" in the context of the original source exception to the NJFC Act's public disclosure bar. In analyzing other statutes that use both "person" and "individual," the United States Supreme Court has interpreted "individual" to mean "a natural person, and in particular to distinguish between a natural person and a corporation." Mohamad v. Palestinian Auth., 566 U.S.

449, 454 (2012).  Nevertheless, courts in other jurisdictions have assessed whether a corporate entity may be an original source without deciding this issue. See, e.g., United States ex rel. Precision Co. v. Koch Indus., Inc., 971 F.2d 548 (10th Cir. 1992).  We decline to decide this issue because even if a limited liability company may be considered an original source under the NJFC Act, plaintiffs are not an original source because their knowledge is not "direct" and "independent."

In construing "direct" and "independent," we start with the plain language of the statute.  See State v. Thompson, 250 N.J. 556, 572 (2022).  The definition of "direct" includes "marked by absence of an intervening agency, instrumentality, or influence."  Merriam-Webster's Collegiate Dictionary 353 (11th ed. 2020).  The definition of "independent" includes "not requiring or relying on something else."  Id. at 633.  Taking those definitions together, "direct and independent" requires that the relator's knowledge be gained from its own efforts and that the knowledge does not depend on public information.

New Jersey courts have not previously defined the terms direct and independent, but federal courts have.  The definitions used by federal courts are consistent with the plain language of the NJFC Act.  Federal courts have held that for knowledge to be "direct," it must be "'obtained without any intervening

agency, instrumentality, or influence.'" United States ex rel. Schumann v. Astrazeneca Pharms., L.P., 769 F.3d 837, 845 (3d Cir. 2014) (quoting United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 520 (3d Cir. 2007)) (internal quotation marks omitted). Direct knowledge must be "based on 'first-hand' information," Zizic, 728 F.3d at 239 (quoting United States ex rel. Paranich v. Sorgnard, 396 F.3d 329, 336 (3d Cir. 2005)), and cannot be "derivative of the information of others," Paranich, 396 F.3d at 336 (quoting United States ex rel. Hafter v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1162 (10th Cir. 1999)).

In their complaints, plaintiffs acknowledge that they learned of the alleged fraudulent schemes by having their agents conduct a series of interviews. Indeed, those interviews were conducted before plaintiffs, which are limited liability companies, were even formed. Therefore, plaintiffs did not have direct and independent knowledge of the alleged fraud. Instead, they were twice removed from direct knowledge. Their parent corporation used agents to conduct interviews, then analyzed publicly available data. After that information was collected indirectly, plaintiffs were then incorporated to bring the actions. In short, plaintiffs' knowledge was not direct and independent

22

because it came from interviews conducted by agents who, in turn, were not directly involved in the alleged transactions.

Plaintiffs argue that the definition of direct and independent should not be narrowly construed because the goal of the NJFC Act is to root out fraud. The New Jersey Legislature, like Congress, however, has struck a balance. After there is a public disclosure of the alleged fraud, a private party's suit is not always necessary because the Attorney General can investigate and bring a direct action on behalf of the State. See N.J.S.A 2A:32C-5(a), (d). Therefore, applying the plain-language definition of direct and independent maintains the balance of rooting out fraud but also preventing parasitic private lawsuits. Brennan, 454 N.J. Super. at 620.

Having conducted a de novo review, we affirm the orders dismissing plaintiffs' complaints in New Jersey against Bayer and Lilly based on the public disclosure bar. Given that ruling, we need not reach the issues of the first-to-file rule and the sufficiency of the pleadings.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2731-20