**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1340-23

STATE OF NEW JERSEY ex rel.
EDELWEISS FUND,
LLC,

     Plaintiff-Respondent,

v.

JPMORGAN CHASE & CO.,
JPMORGAN CHASE BANK, N.A., J.P.
MORGAN SECURITIES LLC, f/k/a
JPMORGAN SECURITIES, INC.,
CITIGROUP INC., CITIGROUP
GLOBAL MARKETS INC., CITIBANK,
N.A., CITIGROUP FINANCIAL
PRODUCTS INC., CITIGROUP
GLOBAL MARKETS HOLDINGS INC.,
CITIGROUP GLOBAL MARKETS
LIMITED, WELLS FARGO &
COMPANY, WELLS FARGO BANK,
N.A., WELLS FARGO SECURITIES
LLC, WACHOVIA BANK, N.A., its
predecessor by merger, BANK OF
AMERICA CORPORATION, BANK OF
AMERICA, N.A., BANK OF AMERICA
SECURITIES LLC, MERRILL LYNCH,
PIERCE, FENNER & SMITH
INCORPORATED, BANK OF
AMERICA CAPITAL CORPORATION,

BOFA MERRILL LYNCH ASSET
HOLDINGS, INC., BANK OF AMERICA
MERRILL LYNCH, MORGAN
STANLEY, MORGAN STANLEY
SMITH BARNEY LLC, MORGAN
STANLEY & CO. LLC, and MORGAN
STANLEY CAPITAL GROUP INC.,

      Defendants-Appellants.

_____

Argued October 1, 2024 – Decided December 27, 2024

Before Judges Gooden Brown and Smith.

On appeal from an interlocutory order of the Superior
Court of New Jersey, Law Division, Mercer County,
Docket No. L-0885-15.

Robert N. Hochman (Sidley Austin LLP) of the Illinois
bar, admitted pro hac vice, argued the cause for
appellants Morgan Stanley, Morgan Stanley Smith
Barney LLC, Morgan Stanley & Co. LLC, and Morgan
Stanley Capital Group Inc. (Aguilar Bentley LLC,
Robert N. Hochman, Joan M. Loughnane (Sidley
Austin LLP) of the New York bar, admitted pro hac
vice, Kathleen L. Carlson (Sidley Austin LLP) of the
Illinois bar, admitted pro hac vice, David H. Hoffman
(Sidley Austin LLP) of the Illinois bar, admitted pro
hac vice, and Thomas H. Collier (Sidley Austin LLP)
of the Illinois bar, admitted pro hac vice, attorneys;
Anna Aguilar, Lisa D. Bentley, Kathleen L. Carlson,
David H. Hoffman, Robert N. Hochman, Thomas H.
Collier, and Joan M. Loughnane, on the joint brief).

Jennifer L. Del Medico (Jones Day), and Michael P.
Conway (Jones Day) of the Illinois bar, admitted pro
hac vice, attorneys for appellants Wells Fargo &

A-1340-23

Company, Wells Fargo Bank, N.A., Wells Fargo Securities, LLC, and Wachovia Bank, N.A. (Jennifer L. Del Medico and Michael P. Conway, on the joint brief).

Greenberg Traurig, LLP, attorneys for appellants JP Morgan Chase & Co., JPMorgan Chase Bank, N.A., and J.P. Morgan Securities LLC (Eric D. Wong, on the joint brief).

Gibbons PC, Matthew D. Benedetto (Wilmer Cutler Pickering Hale & Dorr LLP) of the California bar, admitted pro hac vice, and Megan E. Barriger (Wilmer Cutler Pickering Hale & Dorr LLP) of the Massachusetts bar, admitted pro hac vice, attorneys for appellants Bank of America Corporation, Bank of America, N.A., Bank of America Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Bank of America Capital Corporation, BofA Merrill Lynch Asset Holdings, Inc., and Bank of America Merrill Lynch (Lawrence S. Lustberg, Matthew D. Benedetto, and Megan E. Barriger, on the joint brief).

Pashman Stein Walder Hayden PC, Susanna M. Buergel (Paul, Weiss, Rifkind, Wharton & Garrison LLP) of the New York bar, admitted pro hac vice, and Daniel A. Negless (Paul, Weiss, Rifkind, Wharton & Garrison LLP) of the New York bar, admitted pro hac vice, and Jane O'Brien and Lina Dagnew (Paul, Weiss, Rifkind, Wharton & Garrison LLP) of the District of Columbia bar, admitted pro hac vice, attorneys for appellants Citigroup Inc., Citigroup Global Markets Inc., Citibank, N.A., Citigroup Financial Products Inc., Citigroup Global Markets Holdings Inc., and Citigroup Global Markets Limited (Brendan M. Walsh, Susanna M. Buergel, Daniel A. Negless, Jane O'Brien, and Lina Dagnew, on the joint brief).

Daniel W. Levy (McKool Smith, PC) argued the cause for respondent (Stone & Magnanini LLP, Erica Blachman Hitchings (Whistleblower Law Collaborative LLC) of the Massachusetts bar, admitted pro hac vice, and Daniel W. Levy, attorneys; Robert A. Magnanini, Julio C. Gomez, Erica Blachman Hitchings, and Daniel W. Levy, on the brief).

PER CURIAM

In this qui tam action, plaintiff Edelweiss Fund LLC, hereinafter referred to as Edelweiss or relator, filed suit on behalf of the State of New Jersey. The complaint alleged that defendants, a number of financial institutions and their subsidiaries,[1] violated the New Jersey False Claims Act (NJFCA or the Act), N.J.S.A. 2A:32C-1 to -15, -17 to -18, in connection with their resetting of interest rates of variable-rate, tax-exempt municipal bonds, defrauding the State of more than $100 million. Defendants moved for summary judgment based on an affirmative defense contained in the NJFCA, and relator cross-moved for summary judgment opposing dismissal of the action. Retroactively applying a 2023 amendment to the NJFCA, the trial court denied defendants' motion and granted relator's cross-motion in an order entered on October 24, 2023. By leave

---

[1] Defendants consist of entities and subsidiaries of JPMorgan Chase & Co., Citigroup Inc., Wells Fargo & Company, Bank of America Corporation, and Morgan Stanley.

A-1340-23

granted, defendants appeal from the interlocutory order.  For the reasons that follow, we reverse.

I.

The NJFCA

By way of background,

> [t]he [NJFCA] imposes civil penalties on any person who "[k]nowingly presents . . . a false or fraudulent claim for payment or approval."  N.J.S.A. 2A:32C-3(a).  The [NJFCA] is modeled on the [Federal False Claims Act (federal FCA)] and is intended to protect the government, and ultimately taxpayers, from paying false claims.  See State ex rel. Hayling v. Corr. Med. Servs., Inc., 422 N.J. Super. 363, 372 (App. Div. 2011) (quoting Assemblyman Herb Conaway, Jr., who described the [NJFCA] to the Assembly[] Judicia[ry] Committee "as New Jersey's [whistleblower] statute which tracks the federal law that allows private individuals . . . to sue on behalf of the government to recover the losses to the public").  A "claim" is defined to include a request or demand for money, property, or services that is "made to any employee, officer, or agent of the State" if the State provides any portion of the money, property, or services requested.  N.J.S.A. 2A:32C-2.
>
> [State ex rel. Health Choice Grp., LLC v. Bayer Corp., 478 N.J. Super. 184, 195 (App. Div. 2024) (omissions and third and last alteration in original).]

Under the NJFCA, the Attorney General (AG) must investigate a violation of the Act and may bring a civil action against an offending party in either state

5

or federal court. N.J.S.A. 2A:32C-5(a). While a private person may also bring a civil action in the name of the State of New Jersey for a violation of the Act, a copy of the complaint must be served upon the AG to afford the AG the opportunity to intervene and proceed with the action on behalf of the State. N.J.S.A. 2A:32C-5(b), (d). To that end, a NJFCA complaint instituted by a private person shall remain under seal for at least sixty days to enable the AG to decide whether to proceed with the action. N.J.S.A. 2A:32C-5(c), (g).

If the AG intervenes and proceeds with the action, the AG then has the primary responsibility for prosecuting the action. N.J.S.A. 2A:32C-6(a). If the AG decides not to proceed with the action, the person who initiated the action shall have the right to conduct the action and is rewarded with a portion of any recovery.[2] N.J.S.A. 2A:32C-6(f), 7(d). "The decision of the [AG] on whether to proceed with an action shall be deemed final and shall not be subject to review by any court or agency." N.J.S.A. 2A:32C-6(f). If the AG later wishes to intervene and take over the action, the AG must move for leave to do so based upon a showing of good cause. Ibid.

---

[2] Generally, the relator bringing the action recovers regardless of whether the AG intervenes or not. See N.J.S.A. 2A:32C-7(a) to (b), (d). If the AG does intervene, the relator receives 15% to 25% of any recovered proceeds. N.J.S.A. 2A:32C-7(a). If the AG does not intervene, the relator receives 25% to 30% of recovered proceeds. N.J.S.A. 2A:32C-7(d).

A-1340-23

The NJFCA affords alleged violators an affirmative defense referred to as the public disclosure bar. N.J.S.A. 2A:32C-9(c); see Health Choice, 478 N.J. Super. at 199 (defining the public disclosure bar defense). The public disclosure bar precludes actions by private persons based on allegations or transactions that have previously been publicly disclosed, unless "the person bringing the action is an original source of the information." N.J.S.A. 2A:32C-9(c). This affirmative defense is not available when an action is brought by the AG or when the AG intervenes and takes over a case brought by a relator. Ibid. Instead, it serves as a barrier to parasitic lawsuits while "encouraging private persons to root out fraud." Brennan ex rel. State v. Lonegan, 454 N.J. Super. 613, 620 (App. Div. 2018) (quoting Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280, 295 (2010)).

As set forth below, in June 2023, the Legislature amended N.J.S.A. 2A:32C-9(c). One of the amendments provides that a court shall not dismiss a relator's action or claim under the NJFCA on the basis of the public disclosure bar if such dismissal is "opposed by the [AG]." Ibid. Pursuant to the amendment, the AG may oppose the dismissal without intervening and taking over the action. Ibid. The Legislature stated that the amendments to the NJFCA were to "take effect immediately." L. 2023, c. 73, § 11.

## The Action

Turning to the underlying facts of this appeal, variable-rate demand obligations (VRDOs) are variable-rate, tax-exempt municipal bonds issued by state and local governments to finance long-term public interest projects for local communities. They allow the issuers to borrow money for long periods while paying lower, short-term interest rates and are attractive to investors because they are low-risk, offer high-liquidity, and are generally tax-exempt.

VRDO issuers hire banks to act as remarketing agents. In that capacity, the banks are contractually obligated to reset the interest rates for VRDOs at the lowest rate that, in their judgment, would enable the bond to be sold at face value. When resetting rates, the banks must consider "prevailing market conditions" and the individual characteristics of the bonds, and attempt to broadly market the bonds to those investors who would be willing to hold the bonds at the lowest interest rates possible.

Relator is a limited liability company located in Delaware. Relator's sole principal, B. Johan Rosenberg, is a registered municipal advisor with more than twenty years of experience advising municipalities and other clients on issuing securities such as VRDOs. Rosenberg noticed that two very different VRDOs

had the same interest rates and rate changes for a significant period of time. He found this "anomalous" and "odd."

Because there was no existing way to efficiently analyze and compare interest rates for groups of VRDOs, Rosenberg developed his own patented commercial software. He then obtained raw VRDO data by subscribing to the Short-Term Obligation Subscription Service offered by the Municipal Securities Rulemaking Board (MSRB) at a cost of $10,000 annually. MSRB is a self-regulatory organization created by statute and overseen by the Securities and Exchange Commission. Rosenberg obtained additional data that was posted on the MSRB's free online portal, Electronic Municipal Market Access (EMMA). The same data was also available through subscription services offered by Bloomberg's "Municipal Securities Master Database," a global provider of financial news and information, although limits applied as to how much data could be downloaded.

Rosenberg then performed a forensic analysis of the interest rates for VRDOs issued by New Jersey and other states for which defendants served as the remarketing agents for the period from April 1, 2009, through November 14, 2013. The results led Rosenberg to suspect that defendants were fraudulently

9

collecting fees as remarketing agents for services they did not perform as required.[3]

As a result, in 2015, relator filed a complaint under seal on behalf of the State of New Jersey alleging that defendants violated the NJFCA in connection with the resetting of VRDO interest rates. Specifically, relator alleged that in a long-term coordinated scheme, defendants: (1) intentionally failed to reset rates at the lowest possible rate, opting instead to reset rates mechanically en masse, which relator termed "robo-resetting," at artificially high rates, with no consideration of a bond's individual characteristics, the prevailing market conditions, or investor demand; (2) ignored the investors defendants knew would accept the lowest interest rates, thereby failing to ascertain the lowest possible rate that could be charged; and (3) charged the State fees for remarketing services that were not provided and letter of credit services that were needlessly incurred.[4]

---

[3] He later analyzed more current data, including 226 rate resets that occurred between June 30 and August 16, 2023, and alleged defendants' misconduct continued through this period.

[4] Relator has pursued similar litigation in other states. In Illinois, several of defendants here, along with three other banks, agreed to pay $48,000,000, exclusive of counsel fees, to resolve the case. Constantine Cannon Announces Record $70 Million Whistleblower Settlement for Alleged Municipal Bond

While the case was under seal, relator amended the complaint twice—on January 24, 2017, and March 28, 2019. On July 17, 2019, the AG declined to intervene in the case. After the trial court unsealed the case on July 26, 2019, relator filed a third amended complaint in early 2020. Thereafter, defendants moved to dismiss the complaint, relying on the public disclosure bar and other grounds. The court granted defendants' motion on November 30, 2020, and dismissed the complaint without prejudice.

In analyzing the applicability of the public disclosure bar, the court applied the seminal "X + Y = Z" formula set out in <u>United States ex rel.</u>

Fraud and Price Fixing, <u>Constantine Cannon</u> (Mar. 22, 2024), https://constantinecannon.com/firm-news/constantine-cannon-record-70-million-whistleblower-settlement/; <u>see generally</u> <u>State ex rel. Edelweiss Fund, LLC vs. JPMorgan Chase & Co.</u>, No. 2017-L-000289 (Ill. Cir. Ct. Feb. 1, 2019) (denying defendants' motion to dismiss on ground that relator was original source). Discovery is ongoing in cases in New York and California. <u>See</u> <u>State ex rel. Edelweiss Fund, LLC v. JPMorgan Chase & Co.</u>, No. 100559/2014, 2024 WL 3913912 (N.Y. Sup. Ct. Aug. 23, 2024) (ruling on document redaction); <u>see also</u> <u>State ex rel. Edelweiss Fund, LLC v. JPMorgan Chase & Co.</u>, 307 Cal. Rptr. 3d 750, 758 (Ct. App.), <u>as modified on denial of reh'g,</u> (2023) (reversing trial court's dismissal of Edelweiss's complaint and rejecting defendant banks' argument that Edelweiss's claims were foreclosed by the public disclosure bar in the California False Claims Act, Cal. Gov't Code §§ 12650-12656). <u>But see</u> <u>Rosenberg v. JPMorgan Chase & Co.</u>, 169 N.E.3d 445, 461, 465-66 (Mass. 2021) (affirming dismissal of Rosenberg's qui tam action after the court found that EMMA was "news media" triggering the public disclosure bar of the Massachusetts False Claims Act, Mass. Gen. Laws ch. 12, §§ 5A-5O).

<u>Springfield Terminal Railway Co. v. Quinn</u>, 14 F.3d 645, 654 (D.C. Cir. 1994), where the court stated:

> On the basis of plain meaning, and at the risk of belabored illustration, if $X + Y = Z$, Z represents the allegation of fraud and X and Y represent its essential elements. In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed . . . .
>
> . . . In terms of the mathematical illustration, when X by itself is in the public domain, and its presence is essential but not sufficient to suggest fraud, the public fisc only suffers when the [whistleblower's] suit is banned. When X and Y surface publicly, or when Z is broadcast, however, there is little need for qui tam actions, which would tend to be suits that the government presumably has chosen not to pursue or which might decrease the government's recovery in suits it has chosen to pursue.
>
> [<u>Ibid.</u> (emphasis omitted).]

Stated differently, "where only one element of the fraudulent transaction is in the public domain (e.g., X), the qui tam plaintiff may mount a case by coming forward with either the additional elements necessary to state a case of fraud (e.g., Y) or allegations of fraud itself (e.g., Z)." <u>Id.</u> at 655 (emphasis omitted).

Applying these principles, the trial court made the following findings:

> It is clear from a generous reading of the third amended complaint and the applicable cases that the

A-1340-23

[NJFCA] public disclosure bar precludes relator's fraud claims because the underlying transactions on which they are based were public[ly] disclosed data regarding VRDO rate resets.

This rate reset data was public[ly] disclosed through easily accessible websites, and this [c]ourt is far more persuaded by the cases cited by defendants[] which [espouse] . . . the overwhelming majority view, that these types of websites qualify as news media.

So th[e] X, which are defendants' obligations that are set forth in the remarketing agreements, and the Y, the VRDO rate reset data, were public[ly] disclosed before this lawsuit was filed.

The trial court ruling in the parallel Massachusetts case[5] is persuasive to this [c]ourt on this issue[,] and this [c]ourt agrees with [that court's] analysis, mainly that the VRDO reset data was public[ly] available in the official statements, through EMMA, as well as through Bloomberg . . . which . . . permits SIFMA[6] Index information.

Similarly[,] here the sources of data for relator's claim, EMMA, Bloomberg, and Federal Reserve economic data, are all news media[,] and [that] holding is consistent, as I said, [with] the overwhelming majority of cases.

---

[5] Commonwealth ex rel. Rosenberg v. JPMorgan Chase & Co., No. SUCV2014-03323-BLS1, 2019 WL 3643035 (Mass. Super. Ct. July 23, 2019), aff'd sub nom., Rosenberg v. JP Morgan Chase & Co., 169 N.E.3d 445 (Mass. 2021).

[6] SIFMA refers to the Securities Industry Financial Markets Association swap index, which tracks the average interest rate for highly rated VRDOs reset on a weekly basis.

A-1340-23

This [c]ourt is not persuaded by the outlier case from the California Court of Appeals relied upon by relator, the [Bartlett] v. Miller . . . case.[7] . . . [R]elator[] contend[s] that the Y is that defendants collusively used a rate setting process to artificially inflate VRDO rates. . . . [D]efendants are correct in pointing out that the conclusion is the ultimate inference of fraud which is the Z.

Defendants are also correct in pointing to N.J.S.A. 2A:32C-9(c)[,] which states that no action brought under this Act shall be based upon public disclosure of allegations or transactions. The key word there being transactions, which means that the NJFCA does not require the disclosure of allegations of fraud where the transaction[s] upon which the assertion of fraud is based are public[ly] disclosed. And this is consistent once again with the Springfield Terminal case. And this ultimately means that there does not have to be public disclosure of the allegations of robo[-]resetting.

Another case that is persuasive in this analysis is Conrad v. Abbott Labs, from the District of Massachusetts 2013,[8] which held that a relator cannot bring a qui tam suit based on public[ly] disclosed facts, even if her expertise makes her the first to understand the alleged fraud.

---

[7] State ex rel. Bartlett v. Miller, 197 Cal. Rptr. 3d 673 (Ct. App. 2016).

[8] United States ex rel. Conrad v. Abbott Labs., Inc., No. 02-11738, 2013 WL 682740 (D. Mass. Feb. 25, 2013).

And it is likewise clear that relator cannot qualify as an original source because the claims are not based on direct and independent information.

The term direct and independent comes from N.J.S.A. 2A:32C-9(c), which defines original source as an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the State before filing an action under this Act based on this information . . . .

Direct knowledge means firsthand under the analogous federal case law. This means that the third[-]party statements of the unidentified witnesses do not qualify since they are indirect knowledge.[9] And just looking at this prong, it is clear that relat[or] is not an original source.

In addition, relator does not possess knowledge independent of public[ly] disclosed transactions. Inferences drawn exclusively from public[ly] disclosed information are not independent of that information. That[ is] a logical statement and consistent with the law stated by . . . defendants. There are no true insiders here that qualify as an original source, and to say otherwise would be disingenuous to the spirit and letter of the [NJFCA].

---

[9]  Relator added to the third amended complaint allegations by defendants' former employees that defendants reset VRDOs en masse without individualized consideration, aimed to make sure bonds were not "put" back to remarketing agents, and primarily marketed VRDOs to existing customers, making negligible efforts to court prospective purchasers.

A-1340-23

On March 1, 2021, relator filed its fourth amended complaint. Defendants again moved to dismiss the complaint based on the public disclosure bar and other grounds. On September 13, 2021, the court denied defendants' motion without prejudice, finding that relator had addressed the defects in the third amended complaint, such as clarifying defendants' obligations under the remarketing agreements vis-à-vis individualized rate setting and explaining how the statistical analysis performed by Rosenberg supported an allegation of fraud.

As to the public disclosure bar, the court found as follows:

> Defendant[s] also contend[] that the fourth amended complaint should be dismissed pursuant to the [NJFCA] public disclosure bar. Defendants raise significant issues in support of their motion and relator raised significant . . . issues in opposition. What is clear is that many of the supporting and opposing arguments rely on factual claims that have not been subject to discovery. It would be inappropriate for the [c]ourt to rule on this portion of the motion absent discovery on the issues raised in the motion papers. So[,] the [c]ourt will deny the motion but it will be without prejudice[,] and defendants can bring this motion again if appropriate following discovery on the public disclosure bar.

On March 23, 2023, defendants filed another motion for summary judgment, again urging dismissal of the complaint under the public disclosure bar. Relator opposed the motion and cross-moved for summary judgment on the applicability of the public disclosure bar. While the motions were pending, on

16

June 30, 2023, the New Jersey Legislature amended various provisions of the NJFCA, effective "immediately." L. 2023, c. 73, § 11. In particular, the Legislature amended N.J.S.A. 2A:32C-9(c) to empower the AG to block the dismissal of a qui tam action on public disclosure bar grounds by simply filing a notice of opposition without intervening in the case. Ibid. Notably, the federal FCA had been similarly amended in 2010, Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901-02 (2010) (codified at 31 U.S.C. § 3730(e)), and other state FCAs were subsequently amended in the same way, see, e.g., Act of July 1, 2012, ch. 139, 2012 Mass. Legis. Serv. (H.B. 3539) (West) (codified at Mass. Gen. Laws ch. 12, § 5C).

In an accompanying statement, the New Jersey Legislature stated that it had revised the NJFCA "to comply with federal law for purposes of entitling [the] State to enhanced recovery in Medicaid fraud cases," explaining that:

> Under federal law, a state is entitled to enhanced recovery in Medicaid fraud cases if the Inspector General in the federal Department of Health and Human Services determines that the state has a [FCA] that is "at least as effective" as the federal [FCA] in facilitating these whistleblower actions. Presently, the Inspector General has determined that the NJFCA is not "at least as effective" as the federal [FCA], and has recommended specific revisions. This bill would implement the Inspector General's recommendations.

[Assemb. Budget Comm. Statement to A. 5584 (June 27, 2023).]

Relying upon the 2023 amendment, on August 16, 2023, the AG filed a notice exercising its right to oppose the dismissal of the instant action based on the NJFCA's public disclosure bar. In the notice, the AG wrote in part:

> Federal courts applying the nearly identical provision of the federal [FCA] have held that, "the government has the right to <u>block</u> a defendant's attempt to have a meritorious case dismissed on public disclosure grounds," and "once the government objects [to dismissal on a public disclosure ground], the court does not even address the issue." <u>United States ex rel. Conroy v. Select Med[.] Corp.</u>, No. 3:12-cv-00051, 2017 WL 468276, at *4 (S.D. Ind. Feb. 3, 2017) . . . .
>
> Therefore, because the State opposes dismissal based on the public disclosure bar, the [c]ourt may not dismiss applicable claims in the [f]ourth [a]mended [c]omplaint based on the bar.
>
> [(first and third alterations added) (footnote omitted).]

In the notice, the AG did not discuss whether the 2023 amendment on which it was relying applied retroactively. As a result, the court directed the parties to file supplemental briefs focused upon the retroactive application of this "[newly enacted] veto power." Thereafter, following oral argument, the court denied defendants' motion for summary judgment and granted relator's cross-motion for summary judgment in an October 24, 2023, order. In the order,

18

the court found that the AG's exercise of its veto power rendered the public disclosure bar affirmative defense unavailable to defendants.

In an accompanying oral opinion, the court ruled that the 2023 amendment had to be given retroactive effect as it reflected a mere "procedural" change in how the State, the real party in interest, could block the public disclosure bar from applying. Alternatively, the court ruled that if the 2023 amendment did not apply retroactively, both parties' motions had to be denied given the material issues of disputed fact regarding whether the bar applied. Specifically, the court determined there were disputed factual issues regarding whether there was public disclosure of the transactions through a news media source, and whether relator could be considered an original source of the information.[10]

On January 4, 2024, we granted defendants' motion for leave to file an interlocutory appeal of the October 24, 2023, order, and on October 25, 2024, we granted defendants' motion for a partial stay. On appeal, defendants argue the court erred in ruling that the 2023 amendment to the public disclosure bar applied retroactively. Defendants also contend that the court erred in

---

[10] The court's alternative ruling was entirely contrary to its 2020 ruling that the public disclosure bar affirmative defense was applicable under the facts of the case.

alternatively holding that material issues of fact as to the availability of the public disclosure bar precluded the grant of summary judgment to either party.

## II.

We first address the retroactivity question.

> We apply a two-part test to determine if a statute should apply retroactively. We must first determine "whether the Legislature intended to give the statute retroactive application"; and second, "whether retroactive application of that statute will result in either an unconstitutional interference with vested rights or a manifest injustice." James v. N.J. Mfrs. Ins. Co., 216 N.J. 552, 563 (2014) (quoting In re D.C., 146 N.J. 31, 50 (1996)). "Both questions must be satisfied for a statute to be applied retroactively." [Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 387 (2016).]
>
> As to the first question, there are three circumstances that justify applying a statute retroactively: (1) when the Legislature explicitly or implicitly expresses an intent that a law be retroactive; (2) when an amendment is ameliorative or curative; or (3) when the parties' expectations warrant retroactive application. Ibid.
>
> [Maia v. IEW Constr. Grp., 257 N.J. 330, 349-50 (2024).]

"[C]ourts generally 'enforce newly enacted substantive statutes prospectively, unless [the Legislature] clearly expresses a contrary intent'" for retroactive application. Id. at 350 (first alteration added) (emphasis omitted) (quoting In re J.D.-F, 248 N.J. 11, 22 (2021)). "The Legislature may convey its

20

intent to apply a statute retroactively by expressing it explicitly 'in the language of the statute or in the pertinent legislative history,' or impliedly, by rendering it necessary 'to make the statute workable or to give it the most sensible interpretation.'" Id. at 350-51 (quoting Gibbons v. Gibbons, 86 N.J. 515, 522 (1981)).

"[W]hen determining whether a statute or amendment is ameliorative or curative, courts look to whether the statute or amendment 'is designed merely to carry out or explain the intent of the original statute.'" Id. at 351 (quoting Johnson, 226 N.J. at 388). A curative amendment does not "alter the intended scope or purposes of the original act," but is simply intended to clarify existing law or "remedy a perceived imperfection in or misapplication of a statute." Ibid. (quoting Johnson, 226 N.J. at 388).

"[I]f there is no 'clear expression of legislative intent' concerning retroactivity, then 'a court will look at the controlling law at the relevant time and consider the parties' reasonable expectations as to the law,' which may warrant retroactive application." Ibid. (citation omitted) (quoting Johnson, 226 N.J. at 388-89). "An expectation of retroactive application 'should be strongly apparent to the parties in order to override the lack of any explicit or implicit

expression of intent for retroactive application.'" Ibid. (quoting Johnson, 226 N.J. at 389).

"Settled rules of statutory construction favor prospective rather than retroactive application of new legislation" in order to avoid unfair outcomes. Pisack v. B & C Towing, Inc., 240 N.J. 360, 370 (2020) (quoting James, 216 N.J. at 563). Moreover, "New Jersey courts have repeatedly construed [legislative] language stating that a provision is to be 'effective immediately,' or 'effective immediately on a given date,' to signal prospective application because it 'bespeak[s] an intent contrary to, and not supportive of, retroactive application.'" Maia, 257 N.J. at 352 (first alteration added) (quoting Pisack, 240 N.J. at 371).

Recently, in Health Choice, we considered whether the pre- or post-amendment definition of "original source" applied for purposes of invoking the NJFCA's public disclosure bar and concluded that the 2023 amendments to the NJFCA applied prospectively, reasoning:

> The 2023 amendments to the [NJFCA] used language clearly indicating that the Legislature intended the amendments to apply prospectively. In that regard, the Legislature stated that the amendments "shall take effect immediately." L. 2023, c. 73, § 11. "Our Supreme Court has consistently held that an amendment that is to take effect immediately is to be applied only prospectively." State v. Rosado, 475 N.J.

Super. 266, 276 (App. Div. 2023); see also Pisack, 240 N.J. at 371 (explaining that "the Legislature provided that the 2018 amendatory legislation 'shall take effect immediately.' Those 'words bespeak an intent contrary to, and not supportive of, retroactive application.'" [(citation omitted)] (quoting Cruz v. Cent. Jersey Landscaping, Inc., 195 N.J. 33, 48 (2008))).

The amendments to the [NJFCA] were also not curative. Although the amendments were designed to bring the [NJFCA] into compliance with the [federal] FCA, the Legislature explained that the goal was to enhance recoveries in Medicaid fraud cases.

Federal courts have consistently construed the 2010 amendment to the [federal] FCA to apply prospectively. See, e.g., United States ex rel. Zizic v. Q2Administrators, LLC, 728 F.3d 228, 232 n.3 (3d Cir. 2013); United States ex rel. Poteet v. Bahler Med., Inc., 619 F.3d 104, 107 n.2 (1st Cir. 2010); United States ex rel. May v. Purdue Pharma L.P., 737 F.3d 908, 914-18 (4th Cir. 2013); Bellevue v. Universal Health Servs. of Hartgrove, Inc., 867 F.3d 712, 717-18 (7th Cir. 2017); Prather v. AT&T, Inc., 847 F.3d 1097, 1103 (9th Cir. 2017). Accordingly, we presume that the New Jersey Legislature was aware of the federal law concerning the prospective application of the new definition of original source and meant to likewise apply the [NJFCA] amendments prospectively.

[Health Choice, 478 N.J. Super. at 198-99.]

Here, in ruling that the 2023 amendment to the public disclosure bar applied retroactively, the court agreed with relator that the amendment constituted a procedural, and not a substantive, change as the amendment did

23

"not confer any new right" on the State nor "destroy any of . . . defendants'

[rights]." The court reasoned:

> The [c]ourt agrees with . . . relator that the [newly enacted] veto powers are procedural in function. It is the [c]ourt's position that rather than creating novel rights, the amendment serves as a tool that bolsters the State's ability to protect its existing interest. Legislative change by conferring upon the [AG] the authority to contest dismissal enhances the State's procedural toolkit without altering the fundamental nature of its role in qui tam actions and does so without violating any, quote, vested right, closed quote, of . . . defendant[s].

> In conclusion, the [c]ourt posits that the State's objection to dismissal post amendment is not indicative of the bestowal of new rights but, instead, is an organic expression of its enduring interest in and responsibility for the qui tam claim. This [perspective] aligns with . . . relator's stance and emphasizes the continuity of the State's role in the proceeding.

When a trial court's conclusion is based on its "interpretation of the law and the legal consequences that flow from established facts," its conclusion is "not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995). Rather, we apply a de novo standard of review. Ibid. "Questions of statutory interpretation are also reviewed de novo," without deference "to the legal conclusions reached by the trial court." W.S. v. Hildreth, 252 N.J. 506, 518 (2023) (citing State v. Lane, 251 N.J. 84, 94 (2022)).

24

Based on our de novo review, we agree with defendants that the court failed to consider the express language of the Legislature that the amendments were to take effect "immediately," language which has historically been construed as indicating prospective application. We also believe the amendments were not curative in nature but were enacted to enable the State to obtain enhanced recoveries in Medicaid fraud cases.

Although it is true that the State always retained the power to divest defendants of the public disclosure bar as an affirmative defense, the elimination of the requirement that the State intervene in the action and assume the cost of the litigation in order to do so was a significant change. Had the Legislature viewed this change as suitable for retroactive application, it could have said so.

We also reject relator's argument that the 2023 amendment should be given pipeline retroactivity. In that regard, relator's reliance on Roik v. Roik, 477 N.J. Super. 556 (App. Div. 2024), is misplaced. In Roik, we determined that certain amendments to our intestacy laws and the equitable distribution statute should be applied retroactively to pending cases that were not dismissed prior to the effective date of the new statutes because: (1) the language of the amendments contemplated such retroactivity; (2) the amendments were clearly curative; and (3) pipeline retroactivity advanced the purposes of the amendments

and facilitated the administration of justice. Id. at 574. None of those factors are present here.[11]

### III.

Next, we turn to defendants' challenge to the court's alternate ruling denying summary judgment to either party.

We review the trial court's summary judgment ruling "de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). That standard is well-settled.

> [I]f the evidence of record—the pleadings, depositions, answers to interrogatories, and affidavits—"together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny the motion. R. 4:46-2(c); see Brill v. Guardian Life Ins.

---

[11] Relator also asserts that even if the court's retroactivity ruling is reversed on appeal, "[r]elator's allegations concerning [d]efendants' ongoing false claims submitted after June 30, 2023, must still survive." However, we decline to consider the argument because it was not presented to the trial court and relator has presented no supporting authority on appeal. See In re Est. of Byung-Tae Oh, 445 N.J. Super. 402, 408 (App. Div. 2016) (explaining that "we need not consider . . . belated argument[s]" that were "not raised in the trial court"). Regardless, we are persuaded by the rationale articulated in federal cases holding that the anti-retroactivity rule requires courts to apply the pre-amendment version of the statute to the entire continuous course of conduct. See, e.g., Zizic, 728 F.3d at 232 n.3 (applying only the pre-amendment public disclosure bar to an action alleging conduct both pre- and post-dating the 2010 federal amendment).

Co. of Am., 142 N.J. 520, 540 (1995). On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted. R. 4:46-2(c); see Brill, 142 N.J. at 540.

[Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016).]

"[T]he public disclosure bar involves a question of standing." Health Choice, 478 N.J. Super. at 194. "Whether a party has standing to pursue a claim is a question of law subject to de novo review." Cherokee LCP Land, LLC v. City of Linden Plan. Bd., 234 N.J. 403, 414 (2018); accord Brennan, 454 N.J. Super. at 618. "Standing 'involves a threshold determination of the court's power to hear the case.'" Health Choice, 478 N.J. Super. at 194 (quoting Watkins v. Resorts Int'l Hotel & Casino, Inc., 124 N.J. 398, 418 (1991)). "Relators lack standing to bring claims under the [NJFCA] when the claims are based on allegations or transactions that have already been publicly disclosed and the relators were not the original source of the information." Ibid.

"[T]he public disclosure bar in the [NJFCA] uses the word 'shall,' which denotes that it is a mandatory bar when applicable." Ibid.; N.J.S.A. 2A:32C-9(c).

Accordingly, the public disclosure provision bars an action by a private person when (1) there has been a prior public disclosure of the alleged fraud; and (2) the

27

person's lawsuit is based upon "substantially the same allegations or transactions[";] unless (3) the person is an original source of the information.

[Health Choice, 478 N.J. Super. at 199 (quoting N.J.S.A. 2A:32C-9(c)).]

A public disclosure of transactions raising an inference of fraud does not require that the actual allegations of fraud be published; rather, there must simply be disclosure of the essential information from which the inference could be derived. Springfield Terminal, 14 F.3d at 653-55. Moreover,

there may be situations in which all of the critical elements of fraud have been publicly disclosed, but in a form not accessible to most people, i.e., engineering blueprints on file with a public agency. Expertise in the field of engineering would not in itself give a qui tam plaintiff the basis for suit when all the material elements of fraud are publicly available, though not readily comprehensible to nonexperts.

[Id. at 655 (emphasis omitted).]

Under the NJFCA, public disclosure of the allegations or transactions at issue may be made by the "news media." N.J.S.A. 2A:32C-9(c). Subscription fees to a particular news source do not render its disseminated information non-public. United States ex rel. Patriarca v. Siemens Healthcare Diagnostics, Inc., 295 F. Supp. 3d 186, 200 (E.D.N.Y. 2018); see also United States ex rel. Doe v. Staples, Inc., 932 F. Supp. 2d 34, 40 (D.D.C. 2013) (explaining that subscription

28

trade publication that compiles shipping manifest information qualifies as "news media").

The "original source" language in both the federal FCA and the NJFCA was intended "to avoid 'parasitic lawsuits' based on publicly disclosed information." Brennan, 454 N.J. Super. at 620 (quoting Graham, 559 U.S. at 295). Because we hold that the Legislature did not intend for the 2023 amendments to the NJFCA to apply retroactively, the pre-2023 definition of "original source" applies here. That definition is "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the State before filing an action under this act based on the information." N.J.S.A. 2A:32C-9(c) (2010).[12]

---

[12] With L. 2023, c. 73, § 11, the Legislature amended the definition of "original source" to track the since-amended federal definition, which refers to

> an individual who either (1) prior to a public disclosure as described in this paragraph has voluntarily disclosed to the State the information on which allegations or transactions in a claim are based, or (2) has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the State before filing an action under this act.

> [N.J.S.A. 2A:32C-9(c).]

"'Direct knowledge' is knowledge obtained without any 'intervening agency, instrumentality or influence:  immediate.'"  United States ex rel. Schumann v. AstraZeneca Pharms. L.P., 769 F.3d 837, 845 (3d Cir. 2014) (quoting United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 520 (3d Cir. 2007)).  It is knowledge that is "first-hand," "[seen] with [the relator's] own eyes," "unmediated by anything but [the relator's] own labor," and "not derivative of the information of others."  United States ex rel. Paranich v. Sorgnard, 396 F.3d 326, 336 (3d Cir. 2005) (third alteration in original) (citations omitted) (first quoting United States ex rel. Findley v. FPC-Boron Emp.'s Club, 105 F.3d 675, 690 (D.C. Cir. 1997), overruled on other grounds by United States ex rel. Davis v. District of Columbia, 679 F.3d 832, 838-39 (D.C. Cir. 2012); then quoting Wang ex rel. United States v. FMC Corp., 975 F.2d 1412, 1417 (9th Cir. 1992), overruled on other grounds by United States ex rel. Hartpence v. Kinetic Concepts, Inc., 792 F.3d 1121, 1129 (9th Cir. 2015); and then quoting United States ex rel. Hafter v. Spectrum Emergency Care, Inc. 190 F.3d 1156, 1162 (10th Cir. 1999)).  "Knowledge that is based on research into public records, review of publicly disclosed materials, or some combination of these techniques is not direct."  United States ex rel. Ondis v. City of Woonsocket, 587 F.3d 49, 59 (1st Cir. 2009).

30

"The independent knowledge requirement means that 'knowledge of the fraud cannot be merely dependent on a public disclosure.'" Schumann, 769 F.3d at 845 (quoting Paranich, 396 F.3d at 336). Put differently, "a relator who would not have learned of the information absent public disclosure [does] not have independent information." United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co., 944 F.2d 1149, 1160 (3d Cir. 1991) (internal quotation marks omitted).

In alternately ruling that substantive issues of fact as to the applicability of the public disclosure bar precluded the grant of summary judgment to either party, the court stated:

> [T]he more you look at the law here, the statutory language and the cases interpreting [the public disclosure bar], it[ is] clear that this is an intensely fact-based analysis. Here, . . . relator is asserting that [its] case should[ not] be subject to the public disclosure bar for several reasons.
>
> First, [it] argue[s] that there was no public disclosure in the specific fraud outlined in the complaint before [its] lawsuit[.] [It] highlight[s] the extensive effort and financial investment made by the principal, . . . Rosenberg, to inve[nt] a novel methodology for analyzing bond transaction data ultimately uncovering the alleged fraud.
>
> According to . . . relator, this was[ not] a case of reiterating of facts but a genuinely original discovery. Indeed, it is . . . relator's position that prior to [its]

lawsuit there was no public allegation of [the] specific fraud outlined in the complaint and in subsequent complaints. [It] emphasize[s] the novel methodology invented by . . . Rosenberg to uncover the alleged fraud through the analysis of bond transaction data.

Furthermore, . . . relator contests the characterization of [its] actions as parasitic[,] emphasizing that [it] did[ not] rely on prior disclosures and, in fact, had to go through a rigorous process to unearth the fraud. [It] argue[s] that applying the public disclosure bar in this case goes against the very purpose of encouraging individuals to expose fraud.

Putting forth the principles of [Rule 4:46-2] and considering each summary judgment motion as providing the non-moving party the benefit of all reasonable inferences, the [c]ourt has no choice but to deny . . . defendants' motion and relator's motion on the public disclosure elements. Whether the alleged fraud in question was within the public domain and whether it was only revealed through extensive efforts and financial investment by . . . relator is clearly a question of material fact and must be decided by a fact finder.

The evidence put forth by each side, relator and defendants, and each prong of the public disclosure bar analysis clearly creates a disputed issue of material fact on all the essential elements of this affirmative defense, especially considering that the [c]ourt has to give all favorable inferences to the non-moving party.

The public disclosure bar analysis as set forth above is [a] fact-specific analysis and the factual predicate set forth by . . . defendants and relator[] as to each and every prong of the analysis clearly creates disputed issues of material fact.

32

In its decision, the court departed wholly from its November 2020 determination that the transactions on which Edelweiss based its suit were publicly disclosed by news media and that Edelweiss was not an original source of the information. The court did so without explaining what had changed. Regardless of the technical difficulties Rosenberg encountered in amassing from public sites the information he needed to perform his analysis and the costs he incurred, the fact remains that the data was publicly available. Expert analysis has not been deemed sufficient to support a qui tam suit when "all the material elements of fraud are publicly available, though not readily comprehensible to nonexperts." Springfield Terminal, 14 F.3d at 655. Rosenberg relied on that publicly available data in drawing his conclusions; he did not have direct and independent knowledge that "robo-resetting" was taking place. Therefore, he does not qualify as an original source of information of the alleged fraud. Accordingly, we reverse the court's denial of summary judgment to defendants on this alternate basis.

Reversed and remanded to the trial court for the entry of summary judgment in favor of defendants.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1340-23